# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Komes, 2011 IL App (2d) 100014**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID W. KOMES, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2–10–0014 |
| Filed | June 24, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's grant of the motion to withdraw filed by defendant's postconviction counsel and its grant of the State's subsequent motion to dismiss defendant's postconviction petition were both vacated and the cause was remanded where the record was insufficient to show counsel's compliance with the requirements of Supreme Court Rule 651(c), and on remand, the trial court was directed to require counsel to document compliance with Rule 651(c) and to demonstrate the frivolity of all of defendant's claims–predatory criminal sexual assault of a child. |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, No. 04–CF–30; the Hon. Grant S. Wegner, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |

| Counsel on Appeal | Thomas A. Lilien and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Eric C. Weis, State's Attorney, of Yorkville (Lawrence M. Bauer and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices Zenoff and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1     This is the appeal by defendant, David W. Komes, of the second-stage dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq.* (West 2006)). After the court appointed postconviction counsel for him on a finding that the petition was not subject to first-stage dismissal, counsel sought leave to withdraw, citing *People v. Greer*, 212 Ill. 2d 192 (2004). The court granted counsel's motion and then dismissed the petition on the State's motion; defendant appealed. Defendant now argues that the motion was insufficient under *Greer*. He further argues that we cannot affirm under *Greer*'s alternative standards for affirming such a dismissal. *Greer* allows a reviewing court to affirm despite an insufficient motion when, for one, the record shows that counsel complied with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). We hold that the record does not show such compliance; we therefore vacate both the grant of permission to withdraw and the petition's subsequent dismissal, and we remand the matter for counsel's compliance with Rule 651(c).

¶ 2     Defendant was charged with six counts of predatory criminal sexual assault of a child (720 ILCS 5/12–14.1(a)(1) (West 2002)). The charges involved two victims: J.C., 11 years old at the time of trial, and J.C.'s younger sister, M.C., 8 years old at the time of trial.

¶ 3     Defendant moved to suppress a statement that he made to the Yorkville police, on the ground that he had intellectual impairments that prevented him from validly waiving his *Miranda* rights. A court-ordered evaluation showed that he was of low-normal intelligence and had learning disabilities that particularly impaired his ability to understand spoken language. He did not understand the concept of "rights," but did understand specific rights. Based on this report, defense counsel withdrew the motion to suppress.

¶ 4     Defendant had a jury trial, which resulted in a guilty verdict on every count. Evidence included a videotaped confession that defendant made to the Yorkville police, testimony from the two victims, and evidence of damage to the hymen of one victim. Defendant exercised his right to testify. His testimony, as transcribed, suggests below-normal

-2-

communication skills.

¶ 5    Because two victims were involved, defendant received a nondiscretionary sentence of life imprisonment (see 720 ILCS 5/12–14.1(b)(1.2) (West 2002)).

¶ 6    Defendant filed a direct appeal in which he asserted that the evidence was insufficient and that the court had allowed too much leading questioning of the victims. We rejected these claims. *People v. Komes*, No. 2–05–0246 (2006) (unpublished order under Supreme Court Rule 23).

¶ 7    Defendant then filed a postconviction petition that contained what he categorized as 18 separate claims. (We count seven distinct issues.) These included claims that trial counsel was ineffective for failing to seek further evaluation of his mental status, and that the Yorkville police had coerced his confession.

¶ 8    He also asserted that new evidence showed that Bruce Ford, father of one of the victims and stepfather of the other, was the true perpetrator of the abuse but had coached the victims to incriminate defendant. In support of this claim, he attached newspaper clippings containing reports that, in early 2006, the Yorkville police had arrested Ford for a sex crime that Ford had committed in his own home against a female child under the age of 13, and that Ford had died about a week after the arrest. Defendant asserted that Ford had committed suicide. Defendant further asserted that a videotape of an investigative interview of the victims (which the court had suppressed on defense counsel's motion) also supported his innocence in that both the victims had made statements that implied that Ford had told them what to say.

¶ 9    The way the petition is written is consistent with a person with language-related intellectual impairments.

¶ 10    Within 90 days of the petition's filing, the court entered an order in which it ruled that "the petition [was] not subject to dismissal under § 122–2.1"; it therefore appointed private counsel for defendant. The court later substituted the public defender as counsel.

¶ 11    The record shows seven appearances by attorneys from the public defender's office on defendant's behalf. At several of these appearances, the attorneys described their work relating to the petition.

¶ 12    First, on December 7, 2007, assistant public defender Matthew Fuesting appeared on defendant's behalf. He said that he had spoken to defendant by telephone to discuss waiving attorney-client confidentiality as to trial counsel so that Fuesting could better develop the ineffective-assistance claims.

¶ 13    Second, on February 14, 2008, Fuesting appeared with defendant. Fuesting said that he had spoken to defendant before court and that, based on this, Fuesting was considering adding claims to the petition. Fuesting also said that he had examined the record and was then reviewing the materials that defendant had obtained through pretrial discovery. Defendant told the court that he agreed to waive attorney-client privilege.

¶ 14    Third, on April 28, 2008, Fuesting appeared with defendant. Fuesting told the court that, two weeks before, he had had a telephone conversation with defendant. Defendant had given him additional information. Fuesting had read through some of the transcripts and was

reviewing videos.

¶ 15    Fourth, on June 30, 2008, Victoria Chuffo appeared with defendant. She told the court that Fuesting had left the office of the public defender and that Courtney Emerson would be taking over the case.

¶ 16    Fifth, on September 30, 2008, Emerson, who appeared with defendant, told the court that she was in the process of reading the transcripts.

¶ 17    Sixth, on November 25, 2008, Chuffo appeared with defendant, but said nothing except that she needed a new status date.

¶ 18    Seventh, on January 26, 2009, Emerson appeared with defendant. She agreed to file an amended petition by March 2, 2009, but did not say anything further about her work on defendant's behalf.

¶ 19    On March 23, 2009, Emerson had not filed an amended petition, and the State filed a motion to dismiss all claims.

¶ 20    While the motion to dismiss was pending, Emerson filed a motion to withdraw as postconviction counsel. In it, she alleged that she had read the full record in the case and had found no meritorious issue. She further alleged that she had sent defendant a letter in which she informed him of her opinion. The motion was accompanied by an affidavit of Emerson's in which she averred the truthfulness of the allegations in the motion.

¶ 21    With the motion, Emerson filed a memorandum of law. The first issue that she addressed in the memorandum was Rule 651(c) compliance:

"In this case, counsel did not file a certificate of compliance with Supreme Court Rule 651(c). However, examination of the record shows counsel complied with the requirements of the rule.

a. Consultation with Petitioner. The Petitioner was present in court for several status hearings with counsel. He was present in court on February 14, 2008; April 28, 2008; June 30, 2008; September 30, 2008; November 25, 2008; and January 26, 2009. Counsel spoke with the Defendant regarding his case and specific cases the Petitioner wished for counsel to review in order to proceed on his petition while he was in the holding cells following his court appearance."

She also said that "[c]ounsel ha[d] completed a thorough review of the police reports (including video tape statement, psychological evaluation, trial and hearing transcripts, and appellate briefs, appellate opinion," and that "[c]ounsel ha[d] reviewed the *pro se* petition and determined that it was sufficient."

¶ 22    Emerson's memorandum addressed the merits of a single issue, explaining why she had deemed frivolous defendant's claim that trial counsel was ineffective for failing to seek an evaluation of his fitness.

¶ 23    We note that the dates on which Emerson described "counsel" as having appeared with defendant are the dates of three appearances by Fuesting, two appearances by Chuffo, and two appearances by Emerson. Therefore, when the memorandum said that "counsel" did something, it meant Fuesting, Chuffo, or Emerson without distinction.

¶ 24    We further note that the *record* does not show that any attorney spoke with defendant

-4-

after court on any day. It shows that Fuesting represented that he had spoken to defendant by phone twice and in person before court once. It also shows that Emerson and Fuesting both represented to the court that they had reviewed certain documents.

¶ 25 The court granted Emerson's motion to withdraw without hearing argument. However, as counsel introduced the motion, she made a statement concerning the work she had done:

"As I indicated in my motion, I have thoroughly reviewed this case file, *I've spoken with Mr. Komes regarding some of the issues he wanted addressed*, I reviewed cases he asked me to review, and based on my entire review, I don't believe that there is any issue with any merit and I believe that it would be frivolous for me to file an amended Post-conviction petition and to proceed any further." (Emphasis added.)

¶ 26 Four months after allowing counsel to withdraw, the court heard the State's motion to dismiss. Defendant argued that, because he did not have the record, he could not make proper amendments to the petition. The court granted the State's motion, and defendant timely appealed.

¶ 27 Defendant now argues that postconviction counsel's motion was insufficient under *Greer* and related precedent. He further argues that, given the possibility that his counsel might have developed his actual-innocence claim (that is, the claim based on Ford's suicide), the rule in *Greer* bars us from affirming on the alternative basis that counsel complied with Rule 651(c) and all his claims were frivolous.

¶ 28 The motion was plainly less than what the *Greer* court described as sufficient. Further, the record does not satisfy *Greer*'s standards for when a reviewing court can affirm a withdrawal of counsel despite an insufficient motion.

¶ 29 The *Greer* court said that a proper motion to withdraw should include an explanation of why *all* of the petitioner's claims are frivolous or patently without merit. It also held that a reviewing court can uphold the grant of such a motion despite its deficiency if the record shows that counsel complied with the requirements of Rule 651(c) and that all the claims are frivolous:

"The record itself demonstrates that defendant's postconviction allegations were patently without merit and frivolous. Under the circumstances, the Act presents no impediment to withdrawal of counsel. Although we hasten to emphasize that [counsel used the wrong standard in addressing the viability of the defendant's claims], and that *an attorney moving to withdraw should make some effort to explain why defendant's claims are frivolous or patently without merit, it nonetheless appears that counsel fulfilled his duties as prescribed by Rule 651(c), and the record before us supports counsel's assessment that the defendant's postconviction claims were frivolous and without merit.* Consequently, though the procedure in the circuit court leaves something to be desired, defense counsel should be allowed to withdraw, and we affirm the judgment of the appellate court in that respect." (Emphasis added and in original.) *Greer*, 212 Ill. 2d at 211-12.

For counsel moving to withdraw, the critical point in this passage is the court's description of a proper motion to withdraw. Counsel must make an effort to explain why the petitioner's "claims" are frivolous–we draw attention to the use of the plural noun. Given the ethical

-5-

concerns underlying the court's reasoning (see *Greer*, 212 Ill. 2d at 205-07), "claims" logically must mean *all* of the petitioner's claims. This is because *any* claim that will potentially allow counsel to produce a nonfrivolous amended petition is sufficient to give counsel an ethical basis to continue representation.[1]

¶ 30    Although the *Greer* court specified that a motion to withdraw should address all of a petitioner's claims, it also recognized that, under proper circumstances, the futility of the representation is clear in spite of flaws in the motion. If the record shows that counsel did everything required of him or her under Rule 651(c) *and* that all the claims in the original petition were patently without merit, then it serves no purpose to reverse a grant of leave to withdraw simply because of insufficiencies in the motion.

¶ 31    Here, the motion was not in the form prescribed by *Greer*: it addressed only one of the seven issues that defendant raised. Not only that, it was not nearly as detailed as the motion in *Greer*:

> "Counsel [filed a motion that] stated that he had reviewed the record, transcripts of proceedings, the State's Attorney's files, and had interviewed 'all relevant parties,' including defendant; however, he could find 'no basis on which to present any meritorious issue for review.' Counsel supported his motion with a brief purporting to comply with *Anders*[*v. California*, 386 U.S. 738 (1967),] procedures. In that brief, counsel meticulously detailed his activities after appointment and, with respect to each of defendant's contentions, stated that he could not 'properly substantiate' defendant's claim, concluding that petitioner's claim was 'not meritorious.' Counsel suggested that he had considered other possible issues, but could find no issue of merit." *Greer*, 212 Ill. 2d at 200.

The motion here contained no comparable particulars.

¶ 32    Because the motion was not in the prescribed form, we next must ask whether counsel complied with the requirements of Rule 651(c) and whether it can be determined from the record and counsel's representations that each of defendant's claims was frivolous. In his appellate brief, defendant focuses on asserting the nonfrivolity of his claims. For reasons of analytic clarity, we shift the focus to Rule 651(c) compliance. One of postconviction counsel's duties is to ascertain the petitioner's claims (Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)). Thus, the rule explicitly acknowledges counsel's duty with respect to claims that the petitioner may have but failed to state properly in the original petition. Although counsel has no duty to generate new claims for the petitioner (*People v. Davis*, 156 Ill. 2d 149, 163 (1993)), counsel's assistance is not limited to claims whose gist the petitioner has already succeeded in stating. Unless the record shows that counsel has, in fact, ascertained the

---

[1]*Greer* did not address the possibility of a petition containing claims that, while not necessarily frivolous or patently without merit, nevertheless require of counsel more effort than the statutorily required reasonable assistance (see *People v. McNeal*, 194 Ill. 2d 135, 142 (2000)). Ethically, counsel is obviously free to provide extraordinary assistance if doing so advances a potentially viable claim. However, the rule that only reasonable assistance is required might imply that a court may allow withdrawal if reasonable assistance is not enough.

petitioner's claims, we cannot assume that the claims are in their final form, and deciding their frivolity is likely to be premature.

¶ 33     Rule 651(c) requires:

"[T]hat the attorney *** consult[ ] with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, *** examine[ ] the record of the proceedings at the trial, and *** ma[k]e any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984).

Moreover, counsel's duty to amend the petition includes the duty to fill at least certain kinds of omissions in the petition, even when that means seeking new evidence. See *People v. Johnson*, 154 Ill. 2d 227, 241 (1993) (holding that a presumption exists that "counsel [has] made a concerted effort to obtain affidavits in support of the [otherwise nonviable] post-conviction claims"); see also *People v. Waldrop*, 353 Ill. App. 3d 244, 249-50 (2004) (holding that counsel had provided less-than-reasonable assistance when the record showed a failure to seek such affidavits).

¶ 34     Defendant's argument focuses on an asserted failure of counsel to develop defendant's actual-innocence claim. Counsel can know if a claim requires further development only if he or she has discussed that specific claim with the petitioner. For example, while a claim may have some superficial appeal, the attorney may be barred from presenting it due to ethical concerns. Alternatively, consultation might reveal that an apparently viable claim lacks a factual basis. In *Greer*, unlike this case, counsel reported to the court that he had interviewed all relevant parties, including the defendant, and then stated that he "could not 'properly substantiate' defendant's claim," concluding that the defendant's claim was " 'not meritorious.' " *Greer*, 212 Ill. 2d at 200. As the Illinois Supreme Court stated in *Greer*, "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *Greer*, 212 Ill. 2d at 205. It is also possible that consultation might show that the petitioner, through ignorance of the law, failed to include evidence to substantiate a claim that otherwise appeared to be frivolous. Discussion of other duties is premature if evidence of consultation is lacking.

¶ 35     The discussion of Rule 651(c) compliance in the motion to withdraw is unreliable: it misstates what the record shows and does not assert that Emerson (as opposed to Fuesting or Chuffo) ever spoke with defendant. Thus, the sole indication in the record of Emerson having consulted with defendant is her oral representation that she "spoke[ ] with Mr. Komes regarding some of the issues he wanted addressed [and] reviewed cases he asked me to review." This is simply not equivalent to a representation that she "consulted with petitioner *** to ascertain his *contentions* of deprivation of constitutional rights" (emphasis added) (Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)). Given the evidence in the record of defendant's impaired communication skills, the need for counsel to make a proper record of consultation is even more pronounced. Moreover, although Fuesting kept the court apprised of his consultations with defendant, nothing in the record shows whether Fuesting gave usable records of those consultations to Emerson.

¶ 36     Because we lack a record of counsel's compliance with the requirements of Rule 651(c),

we cannot affirm the court's grant of the motion to withdraw or the related dismissal of the petition. We therefore vacate both and remand the matter. On remand, the court should not grant any motion to withdraw unless counsel documents Rule 651(c) compliance. Further, any motion to withdraw that counsel files should demonstrate the frivolity of every claim of defendant's.

¶ 37     Vacated and remanded with directions.